Eleanor MONAGHAN, Individually and as Guardian Ad Litem for William Monaghan, an incompetent, Plaintiffs,

v.

SZS 33 ASSOCIATES, L.P., a Delaware Limited Partnership, Defendant.

SZS 33 ASSOCIATES, L.P., a Delaware Limited Partnership, Third–Party Plaintiff,

v.

The PORT AUTHORITY OF NEW YORK AND NEW JERSEY, and Port Authority Trans–Hudson Corp., Third–Party Defendants.

SZS 33 ASSOCIATES, L.P., a Delaware Limited Partnership, Second–Third–Party Plaintiff,

v.

TISHMAN CONSTRUCTION CORPORATION OF NEW YORK, McLane Security, Inc., Second–Third–Party Defendants.

No. 89 Civ. 4900 (RWS).

United States District Court, S.D. New York.

Feb. 8, 1994.

Levy Phillips & Konigsberg, New York City (Alan J. Konigsberg, of counsel), for plaintiffs.

Bower & Gardner, New York City (Warren Sanger, of counsel), for defendant SZS 33 Associates, Inc.

Lester, Schwab, Katz & Dwyer, New York City (Adam Hurwitz, of counsel), for defendant R.B. McLane Associates, Inc.

Gordon & Silber, New York City (Steven Sold, of counsel), for defendant Tishman Const. Corp.

The Port Authority of New York and New Jersey (Keith Harris, of counsel), New York City.

## OPINION

SWEET, District Judge.

Defendant and third-party plaintiff Silverstein 33 Associates, L.P. ("SZS") moves, pursuant to 28 U.S.C. § 1292(b), for certification of interlocutory appeal, of the denial of its motion for summary judgment against plaintiff Eleanor Monaghan, individually and as a guardian *ad litem* for her husband William Monaghan ("Monaghan," collectively, the "Plaintiffs") in the opinion of July 22, 1993, *Monaghan v. SZS 33 Assocs., L.P.*, 827 F.Supp. 233 (S.D.N.Y.1993) ("*Monaghan VI*"), or alternatively, for a motion to reargue the denial of summary judgment, pursuant to Local Rule 3(j). Monaghan moves to reargue the portion of *Monaghan VI* granting the respective summary judgment motions, brought pursuant to Rule 56, of defendant and second third-party defendant R.B. McLane Associates, Inc. ("McLane") and of defendant and second third-party defendant

Tishman Construction Corp. of New York, Inc. Corp. of New York, Inc. ("Tishman").

Oral argument was heard on September 8, 1993 and the motions were considered submitted as of that date. Supplemental letters were received by the Court through October 12, 1993.

### The Parties

The Monaghans are natural persons who reside and are domiciled in the State of New Jersey.

SZS, a Delaware limited partnership, owns property in the State of New York, specifically, the property located at 1275 Broadway in New York City, formerly known as the Gimbels' Building (the "Premises").

McLane and Tishman are corporations duly organized and existing under the laws of the State of New York.

The Port Authority of New York and New Jersey (the "Port Authority") and the Port Authority Trans–Hudson Corp. ("PATH"), are governmental entities duly organized and existing under and by virtue of the laws of the States of New York and New Jersey and operate a public railroad transportation system.

### The Facts and Prior Proceedings

The facts and prior proceedings in this diversity action are fully set forth in the prior opinions of this Court, familiarity with which is assumed. *See Monaghan v. SZS 33 Assocs., L.P.*, 827 F.Supp. 233 (S.D.N.Y.1993) ("*Monaghan VI*"); *Monaghan v. SZS 33 Assocs., L.P.*, 148 F.R.D. 500 (S.D.N.Y.1993) ("*Monaghan V*"); *Monaghan v. SZS 33 Assocs., L.P.*, No. 89 Civ. 4900, 1992 WL 135821, 1992 U.S. Dist. LEXIS 7864 (S.D.N.Y. June 1, 1992) ("*Monaghan IV*"); *Monaghan v. SZS 33 Assocs., L.P.*, No. 89 Civ. 4900, 1991 WL 156377, 1991 U.S. Dist. LEXIS 10943 (S.D.N.Y. Aug. 8, 1991) ("*Monaghan III*"); *Monaghan v. SZS 33 Assocs., L.P.*, 760 F.Supp. 355 (S.D.N.Y.) ("*Monaghan I*"), *aff'd*, 953 F.2d 635 (2d Cir.1991) (unpublished summ. order) (Nos. 91–7781, 91–7803, slip op., 1991 WL 281446 (2d Cir. Dec. 5, 1991), referred to as "*Monaghan*

*II* "). Only those facts relevant to the instant motions are presented below.

On March 23, 1987, Monaghan was shot in the head and severely brain damaged during an attempted robbery. The attack took place as he passed through a vestibule or lobby area (the "Vestibule") and descended a stairway ("Stairway 307," originally Stairway No. 1) located on the Premises. He was on his way to the train station operated by PATH and the Port Authority located beneath the Premises.

At the time of the attack, the old Gimbels' Building on the Premises was closed, and SZS had contracted with Tishman to undertake an extensive renovation and construction project on the Premises.

On July 14, 1989, the Plaintiffs brought a diversity action against SZS on a theory of premises liability for negligently and knowingly permitting a dangerous condition to exist upon its premises (the *"SZS Action"*). On December 28, 1990, the Plaintiffs brought a diversity action against McLane and Tishman on a theory of liability for negligently, recklessly, and carelessly securing the Premises and thereby proximately causing Monaghan's injury (the *"McLane Action"*).

After two rounds of discovery, SZS moved for summary judgment. In *Monaghan I*, based upon SZS's representations, this Court granted that motion on alternative grounds: first, SZS did not owe Monaghan a duty of care because it was the dominant estate owner only with regard to the vestibule, not Stairway 307 on which Monaghan was attacked;[1] second, even if the attack took place in the Vestibule, the danger of criminal assault there was not foreseeable; and third, even if the attack took place on Stairway 307, SZS owed Monaghan no greater duty of care than if the attack occurred in the Vestibule.

In its summary order affirming *Monaghan I,* the Second Circuit held that, because the Plaintiffs could identify only two reported crimes that had occurred in the vestibule areas prior to the attack on Monaghan, the Plaintiffs had failed to advance sufficient evidence to create an issue regarding the duty of care SZS allegedly owed Monaghan. *See Monaghan II,* slip op. at 3.

As set forth in detail in *Monaghan IV* and *Monaghan V,* the Plaintiffs' subsequent motion to vacate the summary judgment and reinstate this action was granted after this Court found that SZS had deliberately failed to produce various relevant documents. In *Monaghan V,* this Court also granted the Plaintiffs relief pursuant to Rule 37, Fed. R.Civ.P., in the form of "precluding SZS from raising as a defense the issue that it was not on notice regarding the condition of the Premises or the criminal activities taking place thereon." 148 F.R.D. at 511.

Following the reinstatement of this action, SZS was granted permission to implead PATH and the Port Authority as third-party defendants. SZS filed the third-party complaint naming them as third-party defendants on July 14, 1992. SZS also was granted permission to implead McLane and Tishman as second third-party defendants, and SZS filed that second third-party complaint on September 21, 1992. The *SZS Action* and the *McLane Action* were consolidated under the single caption set forth above by order of the Court on July 8, 1992.

In *Monaghan VI,* the Rule 56, Fed.R.Civ. P., motions for an order granting defendants and second third-party defendants McLane and Tishman summary judgment against the Plaintiffs were granted. The Rule 56 motions of the Port Authority and of PATH, for an order granting them summary judgment against SZS's third-party complaint were also denied. The motion of defendant and third-party plaintiff SZS, brought pursuant to Rule 56, for an order granting summary judgment in its favor against the Plaintiffs was denied as was the motion, brought by SZS and McLane pursuant to Rule 42, Fed. R.Civ.P., for bifurcated trials on the issues of liability and damages. At that time, the motion of SZS and McLane for an order excluding Monaghan from the courtroom during the trial was granted.

On August 2, 1993, SZS filed a timely motion for certification of appeal of the denial of its motion for summary judgment in

---

**1.** PATH was held to be the dominant owner of an easement on the Premises that included the stair-  way.

*Monaghan VI* pursuant to 28 U.S.C. § 1292(b) or, in the alternative, for an order pursuant to local rule 3(j) for reargument the denial of SZS's motion for summary judgment. SZS's request for certification of appeal is denied as is SZS's to reargue for the reasons set forth below.

On August 5, 1993, Plaintiff Eleanor Monaghan filed a motion, pursuant to local rule 3(j), for reargument of this court's decision in *Monaghan VI* dismissing the action against defendants and second third party defendants McLane and Tishman as time barred. For the reasons set forth below that motion is denied as well.

### Discussion

### I. *The Legal Standards of Section 1292(b)*

■ Section 1292(b) provides for a district judge to certify questions for appeal in the event there is a "controlling question of law" about which there is a "substantial ground for difference of opinion" such that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir.1991); *Maritime Ins. Co., Ltd. v. Emery Air Freight Corp.*, 1991 WL 254545 (S.D.N.Y.1991); *Department of Economic Development v. Arthur Andersen & Co.*, 683 F.Supp. 1463, 1486 (S.D.N.Y.1988) (holding "the question turns on an analysis of the relevant facts"). Section 1292(b) is not, therefore, a mechanism "for securing early resolution of disputes concerning whether the trial court properly applied the law to the facts." *Abortion Rights Mobilization Inc. v. Regan*, 552 F.Supp. 364, 366 (S.D.N.Y.1982).

The Second Circuit has held that "[w]here . . . the controlling issues are questions of fact, or more precisely, questions as to whether genuine issues of material fact remain to be tried, the federal scheme does not provide for an immediate appeal solely on the ground that such an appeal may advance the proceedings in the district court." *Harris-*

*com Svenska AB v. Harris Corp.*, 947 F.2d at 631.

■ A denial of summary judgment by definition is based on the notion that triable issues of facts remain. *See, e.g., Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 572 (2d Cir.1993). As such, "[i]t is doubtful whether the denial of summary judgment when the applicable law is clear but there is a genuine issue as to a material fact can properly be certified under Section 1292(b) for that section is limited only to certifying an order involving a 'controlling question of law.'" *Chappell & Co. v. Frankel*, 367 F.2d 197, 200 n. 4 (2d Cir.1966) (quoting 28 U.S.C. § 1292(b)). "Even when the question is the supposed question of law, whether there are any genuine issues of material fact that preclude grant of summary judgment, it seems better to keep courts of appeal aloof from interlocutory embroilment in such factual details." Charles Wright et al., *Federal Practice and Procedure* § 3930, at 160–61 (1977).

■ The Section 1292(b) certification sought by SZS is therefore inappropriate when the denial of summary judgment, as in *Monaghan VI*, was rooted in the conclusion that triable issues of fact remain unresolved. In the present motion to reargue, SZS has not presented an issue of controlling law[2] requiring interlocutory review under the standards set forth under Section 1292(b). Further, in the opinion on the underlying denial of summary judgment the Court determined that:

> while the question of whether one party owes another a duty is a question of law, the answer is inevitably tied to factual questions regarding the circumstances and conditions at issue. In this case, those facts include the foreseeability and notice SZS had of prior criminal acts on the Premises—a fact that is assumed in the Plaintiffs' favor pursuant to both Rule 56 and *Monaghan V,* and the extent to which any duty SZS may have had as landlord was superseded by duties assumed by others through contractual agreements.

**2.** These legal theories are described in greater detail in Section II.A. of this opinion, denying

SZS's motion for reargument.

*Monaghan VI*, 827 F.Supp. at 240. Accordingly, SZS's motion for certification pursuant to section 1292(b) is denied.

## II. *The Legal Standards of Local Rule 3(j)*

■ The standards controlling a motion for reargument pursuant to Local Rule 3(j) and a motion to amend the judgment pursuant to Rule 59(e), Fed.R.Civ.P., are the same. *See Morser v. AT & T Info. Sys.*, 715 F.Supp. 516, 517 (S.D.N.Y.1989); *Lotze v. Hoke*, 654 F.Supp. 605, 607 (E.D.N.Y.1987).

Local Rule 3(j) provides in pertinent part:

There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked.

Thus, to be entitled to reargument under Local Rule 3(j), the Plaintiffs must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion. *See Fulani v. Brady*, 149 F.R.D. 501, 503 (S.D.N.Y.1993); *East Coast Novelty Co. v. City of New York*, 141 F.R.D. 245, 245 (S.D.N.Y.1992); *B.N.E. Swedbank, S.A. v. Banker*, 791 F.Supp. 1002, 1008 (S.D.N.Y. 1992); *Novak v. National Broadcasting Co.*, 760 F.Supp. 47, 48 (S.D.N.Y.1991); *Ashley Meadows Farm Inc. v. American Horse Shows Ass'n*, 624 F.Supp. 856, 857 (S.D.N.Y. 1985).

■ Local Rule 3(j) is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court. *See Caleb & Co. v. E.I. Du Pont De Nemours & Co.*, 624 F.Supp. 747, 748 (S.D.N.Y.1985). In deciding a Local Rule 3(j) motion, the court must not allow a party to use the motion to reargue as a substitute for appealing from a final judgment. *See Morser*, 715 F.Supp. at 517; *Korwek v. Hunt*, 649 F.Supp. 1547, 1548 (S.D.N.Y.1986).

■ Finally, a Local Rule 3(j) motion must be served within ten days after the docketing of the court's determination of the original motion.

## A. *SZS's Motion For Reargument Is Denied*

SZS's motion for reargument may be distilled to the following four claims:

(1) the language concerning the easement is not ambiguous;

(2) the Defendant did not owe a duty on the basis of foreseeability of harm to the Plaintiff in the absence of a special relationship;

(3) Plaintiffs' allegations of proximate cause are conclusory and are insufficient to defeat a summary judgment motion;

(4) Defendant's construction and barriers to the store did not interfere with the stairway.

■ As to the first issue, concerning the language of the easements, on reargument SZS raises the very claims which were previously considered and rejected by the Court in *Monaghan VI*. Summary judgment was denied for a variety of reasons, including an assessment of the plethora of interpretations regarding the easements. In this case, the Court determined that these varying interpretations constituted a question of fact. "Even a cursory reflection on the question reveals that SZS's narrowly focused analysis on the easements is inadequate in the face of numerous genuine issues of fact which remain in dispute." *Monaghan VI*, 827 F.Supp. at 240.

In *Monaghan VI* the Court first found that the language of the easements was both "ambiguous" and "open to differing interpretations, including that SZS, not the Port Authority, was responsible for securing Stairway 307." *Id.* at 240. The opinion next notes that "regardless of how one interprets the easements ... [there is] evidence that SZS assumed responsibility for the security of the area by providing guards who patrolled the Vestibule, Stairway 307, and the Landing." *Id.* at 240.

Finally, as a third basis for denying summary judgment on the question of the easement obligations, the Court found that even if SZS did not have responsibility for Stairway 307, it would still be liable on a "theory of interference with the Port Authority's easements." *Id.* at 240 (citing *Gordon v.*

**66**

*City of Albany,* 278 A.D. 233, 104 N.Y.S.2d 736 (3d Dept.1951). Therefore, as SZS has not put forward any new controlling decisions or factual matters that this court has overlooked, its motion to reargue cannot prevail under the standards of Local Rule 3(j).

■■■ The second issue identified by SZS for reargument is that as a matter of law SZS did not owe a duty to the Plaintiff, in the absence of a special relationship, on the basis of foreseeability of harm.[3] However, in *Monaghan VI,* this court reviewed the relevant New York case law and found that SZS's knowledge of prior criminal activities on the Premises established such a duty. *See Monaghan VI,* 827 F.Supp. at 238–40 (reviewing *Nallan v. Helmsley–Spear, Inc.,* 50 N.Y.2d 507, 429 N.Y.S.2d 606, 407 N.E.2d 451 (1980) (prima facie case established since office building landlord had notice of criminal activity in the area); *Adiutori v. Rabovsky Academy of Dance, Inc.,* 149 A.D.2d 637, 638, 540 N.Y.S.2d 457 (2d Dep't 1989) (holding in absence of prior notice of criminal activity, landlord had no duty); *Miller v. State,* 62 N.Y.2d 506, 478 N.Y.S.2d 829, 833, 467 N.E.2d 493, 497 (1984) (holding "landlord has a duty to maintain minimal security measures . . . in the face of foreseeable criminal intrusion . . ."); *Loeser v. Nathan Hale Gardens, Inc.,* 73 A.D.2d 187, 425 N.Y.S.2d 104, 108 (1st Dep't 1980) (holding third party criminal attack in dimly lit parking lot was foreseeable, consequently landlord held liable); *Sherman v. Concourse Realty Corp.,* 47 A.D.2d 134, 365 N.Y.S.2d 239 (2d Dep't 1975)).

In SZS's motion to reargue, SZS has put forward a number of cases for the proposition that the Vestibule is similar to public sidewalk in which case no legal duty of protection arises. However, this analogy was considered—and rejected—by the Court in *Monaghan VI.*

SZS's attempt to liken the Vestibule to the public sidewalk on which Monaghan walked before entering the Vestibule is unpersuasive. Given the boarded-up condition of the Vestibule, which necessarily decreased the visibility of both Monaghan and the public inside and outside of the enclosed space. SZS's failure to patrol and lock the Vestibule did contribute to the dangerousness of the site and could be found by a reasonable jury to have proximately caused Monaghan's injuries.

827 F.Supp. at 241. The cases cited by SZS on reargument do not sway the Court's determination regarding the substance of SZS's contention, and in the absence of new law or facts, SZS's motion to reargue this point must be denied. Under the legal standard of Local Rule 3(j), no new "controlling" facts or law have been proffered by SZS to warrant reconsideration of the opinion. *See Fulani v. Brady,* 149 F.R.D. at 503.

■■■ As its third point, SZS argues that the allegations of proximate cause weighed by the Court were conclusory and insufficient to defeat a summary judgment motion. However, the cases presented by SZS are inapposite. For example, in *Pena v. New York City Hous. Auth.,* 600 N.Y.S.2d 681 (1st Dep't 1993), the court reversed a summary judgment and dismissed a complaint on the grounds that there was an insufficient record to hold the landlord liable. Specifically, the record "contained no indication of prior criminal activities by third parties in the building" which would establish a basis to conclude that the "cited negligence proximately caused the injury." *Id.* at 681. As noted in *Monaghan IV* and *Monaghan V,* SZS has previously deliberately failed to reveal such evidence, in the nature of security memorandums documenting prior criminal activities in the Vestibule, which is relevant to a proximate cause determination, and accordingly, SZS may not again contest this issue.

**3.** SZS also attempts, on reargument, to assert that only the Port Authority controlled the ingress and egress to the Vestibule. Def.Mem. of Law. at 12. However, Plaintiffs contend that the following extrinsic evidence establishes that SZS and not the Port Authority controlled this area: SZS closed and locked the stairway from above at the Vestibule level and from below at two subway levels; SZS had the keys to lock the Vestibule doors above the stairs and to pull down the gates below the stairway; SZS boarded up the Vestibule, enhancing its dangerousness; and SZS provided armed guard security services to the Vestibule and stairway area. Pl.'s Mem. of Law in Opp'n. at 7.

The final point raised by Defendant SZS concerns the construction and barriers to the store, which SZS contends did not interfere with the stairway. Here, once again, SZS offers no new set of facts or law, as required by Local Rule 3(j), which were not considered in reaching the determination denying its summary judgment motion. As noted in *Monaghan VI,* "[w]hen the record on SZS's Rule 56 motion is considered from the perspective of a [sic] issue-finder, rather than that of an issue-resolver, *see [United States v.] Diebold,* 369 U.S. at [654] 655 [82 S.Ct. 993, 8 L.Ed.2d 176 (1962) ]; *Consarc,* 996 F.2d at 572, as it has been here, several genuine issues of material fact are readily identifiable, and these issues must be resolved by the factfinder at trial, *see [Anderson v.] Liberty Lobby,* 477 U.S. [242] at 249 [106 S.Ct. 2505, 2510–2511, 91 L.Ed.2d 202 (1986) ]. *Monaghan VI,* 827 F.Supp. at 421. Therefore, reargument on the relationship of the construction and barriers with the stairway at this time is inappropriate.

Questions which germinate from fact must be left for trial, questions concerning the law have been considered fully in *Monaghan VI;* accordingly, SZS's motion to reargue is denied.

### B. *Plaintiffs' Rule 3(j) Motion Is Denied*

Plaintiffs move for reargument of the portion of *Monaghan VI* granting summary judgment in favor of McLane and Tishman on the basis that the statute of limitations against the Plaintiffs' action had expired on December 28, 1990. Plaintiffs proffer what they characterize to be a new piece of evidence, a copy of an order appointing Mrs. Monaghan as Mr. Monaghan's guardian *ad litem* on April 12, 1988, *see* Konigsberg Aff.Ex. 1, but fail to explain why such evidence was not introduced at the time the underlying motion was considered.

The law of the case concerning Mr. Monaghan's competency is as follows:

In the case of a person rendered incompetent at the time the cause of action accrues, § 208 tolls the relevant statute of limitations until a legal guardian or committee is appointed to represent the interest of the incompetent.

*Monaghan VI,* 827 F.Supp. at 242 (citing *Von Bulow v. Von Bulow,* 634 F.Supp. 1284, 1300 (S.D.N.Y.1986), *aff'd,* 811 F.2d 136 (2d Cir.1987); *Hernandez v. New York City Health & Hosp. Corp.,* 78 N.Y.2d 687, 694, 578 N.Y.S.2d 510, 585 N.E.2d 822 (1991)).[4] The opinion continued to find that "[a]ccording to the principles set forth in *Von Bulow,* the key date for § 208 purposes is not the date any previous actions were brought by the Plaintiff, but rather the date upon which Monaghan was declared to be legally incompetent and the Plaintiff was appointed as guardian *ad litem* to protect his rights and interests." *Monaghan VI,* 827 F.Supp. at 243. Simply on this basis, it would appear that the proper date should be the date of appointment, April 22, 1988.

However, nothing is simple in this litigation, and *Monaghan VI* complicates the matter by stating that "the critical date for the present issue is May 1987. . . . [when] Monaghan commenced an action is [sic] the Surrogate's Court, Passaic County, New Jersey, seeking an order declaring his father . . . an incompetent." The opinion then notes that the record before the court did not establish the date of *ad litem* appointment, but concludes Eleanor Monaghan was *"functioning in that capacity"* as early as October 23, 1987 when she filed a formal notice of an intent to bring an action against the Port Authority. *Monaghan VI,* 827 F.Supp. 242–43. It would appear that the law of the case, then, accepts both the notions of *de facto* and *de jure* guardianship.

Defendants and second party defendants Tishman and McLane assert that Mrs. Monaghan was *in fact* acting as the guardian *ad litem,* even though the procedure was not formalized until April 22, 1988 and on this

---

4. The *Hernandez* Court held that "the Statute of Limitations is tolled only until appointment of a guardian or the majority of the sole distributee, whichever is earlier, when letters of administration may issue and a personal representative may assume the role of plaintiff. *That is the first time*

*there exists a potential personal representative entitled to "commence an action."* *Hernandez,* 78 N.Y.2d at 694, 578 N.Y.S.2d 510, 585 N.E.2d 822 (citing N.Y.C.P.L.R. § 208; S.C.P.A. 1001) (emphasis added).

basis the statute should begin to run from October 23, 1987. Tishman further contends that:

> [T]he plaintiffs did not offer the order formally appointing Mrs. Monaghan as the guardian *ad litem* in their original opposition to the motion. It is obvious that this was omitted to spare plaintiff's counsel the embarrassment of admitting to the Court that it actually prepared a Notice of Claim and served it upon the Port Authority of New York and New Jersey which represented that Mrs. Monaghan *was* the guardian *ad litem prior to* her actual appointment in the State of New Jersey, and to further avoid confronting the issue of why the plaintiffs commenced an action against the Port Authority of New York and New Jersey in State Supreme Court, New York County, again representing that Mrs. Monaghan was the lawful guardian *ad litem before that was in fact the case.*

Gold Aff. in Opp'n. to Rearg. at ¶ 4 (emphasis in original).[5]

■ In the New York State Court of Appeals case relied upon in *Monaghan VI,* the Court construed "the toll of § 208 to apply until the earliest moment there is a personal representative or potential personal representative...." *Hernandez v. New York City Health & Hosp. Corp.,* 78 N.Y.2d 687, 693, 578 N.Y.S.2d 510, 585 N.E.2d 822. Elsewhere, in "[r]eviewing the legislative history [of § 208], the Court of Appeals [has] concluded 'that the Legislature meant to extend the toll for insanity to only those individuals who are unable to protect their legal rights because of an over-all inability to function in society.'" Joseph M. McLaughlin, *Practice Commentaries to the C.P.L.R.,* C208:3 (McKinney's 1990) (quoting *McCarthy v. Volkswagen of America, Inc.,* 55 N.Y.2d 543, 549, 450 N.Y.S.2d 457, 435 N.E.2d 1072 (1980)); *see also Kaiser v. Cahn,* 510 F.2d 282, 286 (2d Cir.1974) (finding that the purpose of the tolling provision is to "mitigate the difficulties of suit"). Here, it must be concluded that Monaghan's

legal rights were protected as early as October 23, 1987 when Mrs. Monaghan was "functioning" as a *de facto* guardian *ad litem.*

In reaching this conclusion, it must be noted that at no time during the consideration of the summary judgment motion on question of the guardianship's date and its effect upon the statute of limitations claims did the Plaintiffs challenge the factual assertion by the Defendants that Mrs. Monaghan was functioning as a guardian *ad litem* as early as May, but no later than October, 1987.

In cases in which the evidence, serving as the basis for a motion to reargue, was known to be relevant and available at the time of a decision, but not brought to the court's attention, a Local Rule 3(j) motion will be denied. Here, as concluded elsewhere, the Plaintiff "has pointed to no matters or authorities which were overlooked but seeks to determine the effect of a factual determination made by the court in the absence of any factual issue having been presented. Such is not the purpose of reargument." *See General Elec. Credit Corp. v. Toups,* No. 85 Civ. 1740, 1988 WL 3389, 1987 U.S.Dist.LEXIS 12170 (S.D.N.Y. Jan. 5, 1988).

### Conclusion

For the reasons set forth above, Defendant SZS's motion for certification, pursuant to 28 U.S.C. § 1292(b), is denied, as is its motion to reargue, pursuant to Local Rule 3(j), the Court's denial of Defendant SZS's motion for summary judgment in *Monaghan VI.* Plaintiff Eleanor Monaghan's motion to reargue, pursuant to Local Rule 3(j), the Court's order to grant summary judgment as to her claims against defendant and second third-party defendant McLane and to defendant and second third-party defendant Tishman also is denied.

It is so ordered.

---

5. McLane notes "[w]hile [Plaintiff's attorney] wishes to create statutory law in claiming that 'under all circumstances, the statute of limitations must be tolled *until* a court determines that a person is qualified to act as a guardian and to represent an incompetent person', he offers no explanation as to why his client, once qualified to act as a guardian to her husband in 1987, was, in actuality not really able to do so until April, 1988." Hurwitz Aff. in Opp'n. to Rearg. at ¶ 9 (emphasis in original).