**SANTANA PRODUCTS, INC., Plaintiff,**

v.

**SYLVESTER & ASSOCIATES, LTD. and Frederick E. Sylvester, Defendants.**

**No. 98 CV 6721.**

United States District Court, E.D. New York.

Dec. 29, 1999.

Order Denying Reconsideration March 3, 2000.

Frederick A. Nicoll, Law Offices of Frederick A. Nicol, New York City, for defendants.

Paul J. Esatto Jr., Peter I. Bernstein, Scully, Scott, Murphy & Presser, Garden City, NY, for plaintiff.

*Memorandum of Decision and Order*

MISHLER, District Judge.

This action was brought pursuant to Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2, the Lanham Act, 15 U.S.C. § 1125 et seq. and the Donnelly Antitrust Act, New York Gen.Bus.L. § 340. Plaintiff Santana Products, Inc. ("Santana") alleges that Defendants Sylvester & Associates and Frederick E. Sylvester ("Sylvester") (collectively, "Defendants") have contracted and conspired to unreasonably restrain trade in and monopolize a portion of the toilet partition market. Plaintiff further alleges that Defendants have published, distributed and disseminated advertising brochures and other advertising statements which include false and/or misleading representations and disparaging accusations regarding Plaintiff's product.

Defendants move for judgment on the pleadings or, in the alternative, for partial judgment on the pleadings or, in the alternative, for a more definite statement. For the reasons below, we grant Defendants' motion for partial judgment on the pleadings and deny the remainder of Defendants' motions.

## BACKGROUND

Santana manufactures and sells restroom and toilet partitions made of high density polyethylene ("HDPE"). According to the Complaint, HDPE is more durable and cost-effective than conventional materials such as metal, marble and solid phenolic. Plaintiff claims that as demand for HDPE grew, efforts were initiated to exclude HDPE from the field of materials used for toilet partitions. Specifically, "Sylvester, Sylvester & Associates, and the non-party co-conspirators conspired to use scare tactics to discourage specification and acceptance of Santana's HDPE partitions in lieu of or as a replacement material for conventional materials by falsely alleging that Santana's partitions posed a dangerous fire hazard." (Complaint ¶ 23.) As a result of these allegedly false allegations, HDPE toilet partitions were often misclassified by specifiers and building code officials as "interior wall finish" which are required to meet additional fire safety standards.

In late 1989, several alleged non-party co-conspirators formed the Toilet Partitions Manufacturer's Council ("TPMC") but excluded Plaintiff from membership. According to a memorandum from the Formica Corporation, a TPMC member, the TPMC met in November 1989 to "address the competitive threat of HD Polyethylene (Santana) against our thick stock for construction of toilet partitions". (Ex. B to Complaint.) Plaintiff alleges that Sylvester, while employed by Metpar Corporation in 1989, assisted in the creation of a videotape for the Formica Corporation wherein small samples of Santana's HDPE product were ignited and burned. (Complaint ¶ 32.)

The Complaint further alleges, *inter alia:*

- In November 1989, Sylvester, while employed by Metpar, exhibited a portion of what was later incorporated into the Formica videotape at a meeting held at the New York Office of General Services ("OGS") in an effort to have the OGS switch from HDPE to phenolic partitions. (Complaint ¶ 34.)
- In November 1989, Sylvester sent a letter to the Nassau County Fire Marshall stating that HDPE toilet partitions previously provided at the Nassau Coliseum did not meet the proper fire code standards. (Complaint ¶ 37.)

In 1992, Sylvester & Associates was formed. Between 1992 and 1994, Defendants were local architectural representatives of Bobrick Corporation and Bobrick Washroom Equipment, Inc. (collectively, "Bobrick"). During that time, Defendants allegedly sold Bobrick's plastic laminate toilet partitions without obtaining the required approval for such sales from the Materials and Equipment Acceptance Division of the City of New York Department of Buildings. (Complaint ¶¶ 44, 45.) The Complaint specifically alleges:

49. "On information and belief, since at least 1992, [Defendants] have received and distributed Bobrick's 'Advisory Bulletin TB–73' to specifiers and architects providing a comparison of the results of an ASTM E–84 test performed on its 1080 Duraline Series toilet partitions and on HDPE toilet partitions without fire retardant additives. Advisory Bulletin TB–73 falsely and/or misleadingly states among other things: 'Polyethylene paneling without fire retardant additives should not be used in buildings where Class B Interior Wall and Ceiling Finish is required.'

50. On information and belief, [Defendants] distributed a "Fact Sheet" (containing false and/or misleading statements relating to Santana's product) to prospective purchasers of Bobrick toilet partitions within the time period of November 1992 to present.... The "Fact Sheet" compared characteristics of solid phenolic toilet partitions to Santana's HDPE toilet partitions. On information and belief, the "Fact Sheet" falsely and/or misleadingly stated that HDPE had a smoke developed rating 'greatly exceeding National Fire Protection limit ...'
...

51. On information and belief, [Defendants] conducted "box-lunch presentations" between 1992 and 1997 [which included the showing of a slide which] falsely and/or misleadingly illustrates the characteristics of Santana's HDPE toilet partitions."

(Complaint ¶¶ 49–51.)

Aside from the Formica videotape, Plaintiffs allege that Bobrick created a videotape comparing its phenolic toilet partitions with the polyethylene partitions made by Santana. The narrator on the tape states that the polyethylene partitions generate excessive smoke when lit and conducts a flame exposure test presented in time-lapse photography, giving the impression that the polyethylene partitions burn quickly. Plaintiffs allege that Defendants and non-party co-conspirators have shown the Bobrick videotape to building code officials and other administrative officers on numerous occasions to prevent contractors from specifying use of Santana's HDPE partitions. (Complaint ¶ 62.)

In support of its antitrust claim, Plaintiff alleges that beginning in the 1980's and continuing to the present time, Defendants and non-party co-conspirators have, "contracted, combined and conspired to unreasonably restrain trade in the relevant market for toilet partitions in interstate commerce in violation of Section 1 of the Sherman Act." (Complaint ¶ 67.) The alleged illegal conduct includes:

- Knowingly acting in concert with co-conspirators to exclude HDPE toilet

partition manufacturers and sellers from the toilet partition market;

- Knowingly making false statements regarding the flammability of Plaintiff's product;
- Knowingly making false statements regarding the flame and smoke protection standards HDPE must meet, thereby frightening and misleading architects and other specifiers for toilet partitions and discouraging the inclusion of Santana in the competitive bidding process;
- Knowingly making false and/or misleading statements to municipalities and other governmental agencies in an effort to influence them to adopt or modify regulations relating to HDPE partitions and to preclude use of HDPE partitions in government contracts.

(Complaint ¶ 67(a–d).)

Plaintiff further alleges that based on conduct from 1992 to the present time, Defendants and non-party co-conspirators have "conspired to monopolize at least a part of the trade in interstate commerce for toilet partitions and to maintain power to exclude or restrain manufacturers of HDPE partitions from marketing and selling their goods in interstate commerce in violation of Section 2 of the Sherman Act." (Complaint ¶ 72.) The alleged illegal conduct is similar to that underlying the claims under Section 1 of the Sherman Act.

Finally, Plaintiff alleges that Defendants violated the Lanham Act by publishing videotapes and distributing advertising brochures and other materials which included false and/or misleading representations and disparaging accusations with regard to the alleged flammability of Santana's HDPE product. These promotional materials are alleged to have been designed to deceive potential purchasers and discourage them from purchasing Santana's HDPE product. (Complaint ¶ 77.)

## PROCEDURAL HISTORY

This is the third action filed by Plaintiff alleging antitrust and Lanham Act violations by its competitors in the toilet partition industry. In November 1994, Plaintiff filed an action against the TPMC, eleven toilet compartment manufacturers and the Formica Corporation in the Middle District of Pennsylvania (the "1994 Litigation"). The 1994 litigation was settled with a confidential release and covenant not to sue dated January 27, 1995 which released and forever discharged the signatory entities and their respective officers, directors, parents, subsidiaries, employees, agents and attorneys from any, and all claims up to that date.

On October 1, 1996, Plaintiff filed another complaint in the Middle District of Pennsylvania with the caption *Santana Products, Inc. v. Bobrick Washroom Equipment. Inc.*, 3:CV:96–1794 (the "Pennsylvania action"). The complaint in that action alleged, *inter alia*, a conspiracy among Plaintiff's competitors in violation of the antitrust laws. Among those named in the suit were Sylvester & Associates and Frederick E. Sylvester, Defendants here. On July 24, 1998, the court in that action dismissed Plaintiff's claims against Sylvester & Associates and Frederick E. Sylvester for lack of personal jurisdiction. The remaining parties to the Pennsylvania action are still engaged in extensive discovery.

On October 30, 1998, Plaintiff filed the instant Complaint against Defendants only, reiterating many of the same antitrust and Lanham Act claims alleged in the first two actions. Plaintiff also alleged the violation of the Donnelly Antitrust Act (N.Y.GenBus.Law § 340) and included several factual allegations specific to Defendants. On June 1, 1999, Defendants filed that instant motion as well as a motion to stay discovery. On October 19, 1999, we stayed discovery pending resolution of this motion.

## JUDGMENT ON THE PLEADINGS

The standard for obtaining a judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that applicable to a motion to dismiss under Rule 12(b)(6). *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994). Under this test "the Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". *Sheppard*, 18 F.3d at 150 (*quoting Ad–Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir.1987)) (citations omitted).

Defendants assert that all of Plaintiff's claims (1) were previously released by Plaintiff, (2) are time-barred, and/or (3) are pleaded too conclusorily to state an adequate claim.

As part of the settlement in the 1994 Litigation, Plaintiff co-executed a confidential release and covenant not to sue with, among others, Metpar Corporation, the company with which Frederick Sylvester was employed until November 1989. That agreement released and forever discharged Metpar and its employees from any and all claims up to January 27, 1995, the date of execution. (Ex. B to Answer, attached to Def.'s Mem.) Because this release would, at most, only affect actions taken by Sylvester prior to November 1989, which would fall outside all applicable statutes of limitations (see below), we need not address the applicability of the release to the claims asserted herein.

Defendants next assert that Plaintiff does not adequately allege specific acts committed within the applicable statutes of limitations. Plaintiff alleges violations of two federal statutes—the Sherman Act and the Lanham Act. Damages are recoverable under the Sherman Act only if the suit is "commenced within four years after the cause of action accrued." 15 U.S.C. § 15b. Though the Lanham Act does not provide a statute of limitations period, this circuit has applied a six-year statute of limitations to Lanham Act claims. *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir.1996). Plaintiff filed its Complaint on October 30, 1998. It may therefore recover for injury caused by any antitrust violation committed after October 30, 1994 and for any Lanham Act violation committed after October 30, 1992.

■ Defendants spend much time in their brief pointing out that most of the facts alleged in Plaintiff's Complaint took place before the four year period. (Def.'s Mem. at 17–20.) A cause of action is not barred, however, simply because anti-competitive conduct began outside the statutory period, so long as some overt act injuring the plaintiff is committed within the limitations period.[1] Under these circumstances, a plaintiff generally is entitled to recover damages for post-limitations but not pre-limitations overt acts.[2] This issue may be moot, however, as Plaintiff concedes that it is only "entitled to rely on facts occurring outside the statute of limitations as background to demonstrate the state of mind of Defendants". (Pl.'s Mem. at 2.)

---

1. Plaintiff alleges a continuing violation of the antitrust laws dating back to 1989. The Supreme Court in *Zenith Radio Corporation v. Hazeltine Research, Inc.* explained how continuing violations are treated under the statute of limitations:

 [E]ach time a plaintiff is injured by an act of the Defendants a cause of action accrues to him to recover the damages caused by that act and ... as to those damages, the statute of limitations runs from the commis-

sion of the act. 401 U.S. 321, 339, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971) (citations omitted).

2. The exception to this is if the Plaintiff were injured during the statutory period as a result of conduct outside the statutory period where damages were speculative or uncertain at the time the act was committed. *Zenith Radio Corp.*, 401 U.S. at 339, 91 S.Ct. at 806.

 We find that Plaintiff has adequately pled overt acts in violation of both the Sherman Act and the Lanham Act within the statutory periods. For example, Plaintiff alleges that between 1992 and the present, Defendants have distributed the "Advisory Bulletin TB–73" and Fact Sheets and conducted box-lunch presentations in which false and misleading statements were made regarding Plaintiff's product. (Complaint ¶¶ 49–51.) We further find that these allegations are stated with sufficient particularity to satisfy the notice pleading requirement of Federal Rule of Civil Procedure 8(a).

Accordingly, Defendants' motion for judgment on the pleadings is denied.

## PARTIAL JUDGMENT ON THE PLEADINGS

Defendants move, in the alternative, for partial judgment on the pleadings dismissing Count II for failure to state a claim under Section 2 of the Sherman Act. Count II alleges that "Defendants and the non-party co-conspirators have conspired to monopolize at least a part of the trade in interstate commerce for toilet partitions . . .". (Complaint ¶ 72.)

Section 2 of the Sherman Act states in pertinent part:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony.

15 U.S.C. § 2.

A claim of conspiracy to monopolize requires proof of (1) concerted action, (2) overt acts in furtherance of the conspiracy, and (3) specific intent to monopolize. *See, e.g., The Sample Inc. v. Pendleton Woolen Mills, Inc.,* 704 F.Supp. 498, 505 (S.D.N.Y. 1989).

 In their supporting Memorandum of Law, Defendants assert that Plaintiff's claim under Section 2 should fail because Plaintiffs fail to allege that Defendants possesses the requisite market share to threaten a "dangerous probability" of monopolization. (Def.'s Mem. at 23.) Plaintiff correctly responded that it asserted only a claim for "conspiracy to monopolize" and not "attempt to monopolize" under Section 2 and that proof of a "dangerous probability" of success at monopolization is not required to state a claim for conspiracy. (Pl.'s Mem. at 15.) Defendants, in their Reply brief, dismiss Plaintiff's response and maintain that "whether plaintiff's claim is for conspiracy to monopolize or attempt to monopolize, market share remains a necessary element of a claim under Section Two of the Sherman Act, and plaintiff can point to no authority to the contrary." (Def.'s Reply at 4 n. 2.) In response to Defendants' call for authority on this point, the Court offers the following excerpt from American Jurisprudence:

> "The offense of conspiracy to monopolize proscribed by Section 2 of the Sherman Act requires proof of the existence of a conspiracy, a specific intent to monopolize and an overt act in furtherance of the conspiracy. Unlike the offense of attempted monopolization, it is not necessary to establish the existence of market power in a relevant market or a dangerous probability of success in achieving a monopoly in such market."

54 Am.Jur.2d Monopolies, Restraints of Trade and Unfair Trade Practices § 69 (1996) (citations omitted); *accord, H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.,* 879 F.2d 1005, 1019 (2d Cir.1989).

While it is clear that proof of market power is not a necessary element in a conspiracy to monopolize claim, the most troubling question for the Court is whether Plaintiff has adequately asserted Defendants' "intent to monopolize", an issue addressed only briefly in Defendants' Reply brief.

Plaintiff claims that by several overt acts falling within the four year statute of limitations, Defendants have conspired with their fellow competitors in the toilet partition industry to disseminate false information regarding Plaintiff's product. By doing so, Defendants "conspired to monopolize at least a part of the trade in interstate commerce for toilet partitions." This argument appears to be a novel one in this district. Plaintiff, in essence, argues that by their actions Defendants intended to affect the general market structure of the toilet partition industry and that as a matter of law a large number of competitors may band together to monopolize an industry. Both questions deserve greater review than they were granted in the parties' briefs.

First, the Court is not convinced that Plaintiff adequately alleged Defendants' intent to affect competition in the toilet partition market generally, as opposed to competition with Plaintiff alone. Unlike a claim under Section 1 of the Sherman Act which is aimed at restraint of trade and does not require proof of a fundamental alteration of market structure, a claim under Section 2 is "aimed primarily not at improper conduct but at a pernicious market structure in which the concentration of power saps the salubrious influence of competition." *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 272 (2d Cir.1979).

 The essence of monopoly is the power to effect the exclusion of competition generally in a field for the benefit of a particular person or class. *Interborough News Co. v. Curtis Publishing Co.*, 127 F.Supp. 286, 298 (S.D.N.Y.1954) (*citing American Tobacco Co. v. United States*, 328 U.S. 781, 784–787, 809, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946)). The "exclusion of a single person from competition is not mo-

nopoly". *Id.; Los Angeles Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1426–7 (9th Cir.1993) (same). Thus, where only one competitor is alleged to be targeted,[3] as opposed to an entire market, a conspiracy to monopolize claim must fail. *See, e.g., Interborough News Co.*, 127 F.Supp. at 298 (finding no violation of Section 2 where the most the evidence showed was a refusal to deal with one competitor due to real or imagined deficiencies in its operation).

Here, the only actions alleged in support of Plaintiff's Section 2 claims relate to Defendants' efforts to disseminate allegedly false information regarding Plaintiff's product. To allege a conspiracy to monopolize an entire market, Plaintiff must allege more than unfair trade practices directed at one competitor. Plaintiff must allege overt acts by which Defendants intended to gain sufficient market power to "raise prices or exclude competition when it desired to do so." *American Tobacco*, 328 U.S. at 811, 66 S.Ct. at 1140. If intent to restrain trade was synonymous with intent to monopolize, sections 1 and 2 of the Sherman Act would be redundant. There must be an area between these two provisions in which a plaintiff alleges "a conspiracy in restraint of trade that may stop short of monopoly". *American Tobacco*, 328 U.S. at 788, 66 S.Ct. at 1128 (noting the "reciprocally distinguishable" proof required for claims under Section 1 and Section 2). The actions alleged in the Complaint, if true, would fall in this area.

In *H.L. Hayden*, a distributor of dental x-ray equipment sued a manufacturer and two other dealers under the Sherman Act alleging, *inter alia*, conspiracy in restraint of trade and conspiracy to monopolize. The second circuit broke down plaintiff's claims as follows:

"... plaintiff's claim of a section one conspiracy is directed primarily to the

---

**3.** Though Plaintiff does allege that Defendants' conduct harmed "Plaintiff and other HDPE manufacturers" (Complaint ¶¶ 68, 73), Plaintiff does not identify these other manufacturers or even specify how many there are.

The Court, therefore, does not consider Plaintiff to be a representative of a large group of manufacturers, but rather understands Plaintiff's claim to be that Defendant has targeted Plaintiff's product specifically.

elimination of Hayden ... as a competitor, whereas its claim of a section two conspiracy is directed to attaining 'a monopoly over the sale of dental equipment and dental x-ray equipment to dentists in the United States'."

*H.L. Hayden,* 879 F.2d at 1019 (affirming district court finding that plaintiff did not proffer adequate evidence to withstand summary judgment on the conspiracy to monopolize claim).

We find that Plaintiff has failed adequately to allege that Defendants' actions were aimed at monopolizing a portion of the toilet partition market in general and not merely at the elimination of plaintiff as a competitor. Accordingly, Defendants' motion for partial judgment on the pleadings as to Plaintiff's section 2 claim is granted.

■ The second issue presents one of first impression in this district and an alternative basis for granting Defendants' motion for partial judgment on the pleadings on Plaintiff's section 2 claim. Plaintiff appears to argue that Defendants intended to monopolize the toilet partition market not alone, but rather in concert with their fellow competitors. (Complaint ¶ 72.) Without mention, Plaintiff has alleged a conspiracy to form a "shared monopoly"— a theory of liability that has not been addressed by the second circuit and that has been rejected by several other courts. Like the issue above, the "shared monopoly" theory requires further review.

Traditionally, the offense of monopolization occurs where one firm possesses monopoly power. *See* 15 U.S.C. § 2 (stating that "Every person who shall monopolize ... shall be deemed guilty ..."); *see also, e.g., Oksanen v. Page Memorial Hospital,* 945 F.2d 696, 709 (4th Cir.1991) ("Section 2 involves the actions of a single firm to control a market"). Some commentators, however, have posited that Section 2 may be invoked against shared monopolies in which "no single firm possesses sufficient power to be considered a 'monopolist' but nevertheless a relatively few firms achieve

monopoly-like" results. P. Areeda & H. Hovenkamp, Antitrust Law ¶ 810 (1996). Professors Areeda and Hovenkamp admit, however, that "courts and the Federal Trade Commission have universally rejected claims that Section 2 condemns 'shared' monopoly". P. Areeda & H. Hovenkamp, Antitrust Law, at ¶ 810g.

We are cognizant that the Supreme Court in *American Tobacco* affirmed the conviction of horizontal competitors for conspiracy to monopolize, but the issue of whether competitors are capable of conspiring to monopolize was never squarely presented to or addressed by the Court. 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575; *see also H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.,* 672 F.Supp. 724, 742 (S.D.N.Y.1987) (discussing the "discreet question" addressed in *American Tobacco*), *aff'd on other grounds,* 879 F.2d 1005 (2d Cir.1989). The only circuit court to have addressed the issue is the ninth circuit in *Harkins Amusement Enterprises, Inc. v. General Cinema Corp.,* 850 F.2d 477 (9th Cir.1988). The court there refused to hold that the shared monopoly theory can never be viable, but rejected the theory in that case holding that because the market at issue was small with numerous sellers, the shared monopoly theory could not support a claim under Section 2. *Id.* at 490.

Most district courts that have addressed the viability of a shared monopoly theory under Section 2 have rejected it as contrary to the plain language and legislative intent of the Sherman Act. *See, e.g., Consolidated Terminal Systems, Inc. v. ITT World Communications, Inc.,* 535 F.Supp. 225, 229 (S.D.N.Y.1982) (holding that shared monopoly does not violate § 2 of the Sherman Act absent an allegation that a particular Defendant, as opposed to all Defendants, monopolized or attempted to monopolize the market); *Phoenix Elec. Co. v. Nat'l Elec. Contractors Ass'n. Inc.,* 867 F.Supp. 925, 941 (D.Or.1994) (where many competitors are alleged to form a shared

monopoly, claim under § 2 fails); *see also* *H.L. Hayden,* 672 F.Supp. at 741 (expressing "considerable discomfort" with shared monopoly theory and noting that the "notion that two competitors could conspire to monopolize is, seemingly, antithetical").

A district court in Maryland stated the issue as follows:

"The idea that a monopoly is composed of a single economic entity is also reflected in the requirement in an actual monopolization claim that the requisite market power be held by a single defendant. This idea in no way precludes the possibility of a group of firms conspiring to monopolize, if the aim of the conspiracy is to form a single entity to possess the illegal market power. When, however, two or more competitors conspire to create a market environment in which competition and market entry is improperly restricted, but in which market power continues to be shared among these otherwise unrelated entities, this Court holds that there is no conspiracy to monopolize claim stated under Section 2, and the claim must therefore be dismissed."

*Sun Dun, Inc. of Washington v. Coca-Cola Company,* 740 F.Supp. 381, 391–92 (D.Md.1990).

Similarly, under the facts presented here, Plaintiff cannot assert a claim for conspiracy to form a shared monopoly under Section 2 of the Sherman Act. Assuming Plaintiff's allegations are true, the result of Defendants' actions would be the elimination of Plaintiff as a competitor in the toilet partition market. Plaintiff has not alleged, however, that competition among the many remaining manufacturers of toilet partitions would be diminished in any way. Absent such an allegation, Plaintiff's conspiracy to monopolize claim must fail. Thus, as an alternative basis to the one mentioned above, Defendants' motion for partial judgment on the pleadings on Plaintiff's Section 2 conspiracy claim is granted.

## MOTION FOR A MORE DEFINITE STATEMENT

Lastly, Defendants seek an order from the Court requiring Plaintiff to submit "a more definite statement with regard to its allegations after October 30, 1992 on the Lanham Act claim and after October 30, 1994 on the Sherman Act claims" pursuant to Federal Rule of Civil Procedure 12(e). Rule 12(e), however, provides that such motion must be made "before interposing a responsive pleading". Fed.R.Civ.P. 12(e). Defendants interposed their Answer on March 12, 1999. Accordingly, Defendants' motion for a more definite statement is denied.

## CONCLUSION

Defendants' Motion for Judgement on the Pleadings is DENIED.

Defendants' Motion for a More Definite Statement pursuant to Rule 12(e) is DENIED.

Defendants' Motion for Partial Judgement on the Pleadings dismissing Plaintiff's claim under Section 2 of the Sherman Act is GRANTED. There being no just cause for delay, the Clerk of the Court is directed to enter judgment dismissing Plaintiff's claim under Section 2 of the Sherman Act.

Because the instant Order involves "a controlling question of law as to which there is substantial ground for difference of opinion and ... an immediate appeal from the order may materially advance the ultimate termination of the litigation", 28 U.S.C. § 1292(b), we hereby certify the order for immediate appeal pursuant to 28 U.S.C. § 1292(b).

SO ORDERED.

### *Memorandum of Decision and Order*

Plaintiff Santana Products, Inc. ("Plaintiff") moves the Court for reconsideration or, in the alternative, to alter, amend or vacate partial judgement under Federal Rule of Civil Procedure 59(e) and for leave

to amend the Complaint under Federal Rule of Civil Procedure 15.

On December 29, 1999, the Court issued a Memorandum of Decision and Order (the "December 29 Order") denying motions by Defendants Sylvester & Associates, Ltd. and Frederick E. Sylvester ("Defendants") for judgment on the pleadings or, in the alternative, for a more definite statement. The Court granted Defendants' motion for partial judgment on the pleadings, dismissing Plaintiff's claim under Section 2 of the Sherman Act.

For the reasons set forth below, Plaintiff's motion is denied.

## BACKGROUND

The December 29 Order includes a statement of facts relevant to the Court's decision. Familiarity with those facts are assumed here, but a brief summary of the facts as they relate to the instant motion is appropriate.

Plaintiff manufactures and sells restroom and toilet partitions made of high density polyethylene ("HDPE"). Plaintiff claims that Defendants. Plaintiff's competitor, joined with other competitors to form the Toilet Partitions Manufacturer's Council ("TPMC"). The TPMC did not ask Plaintiff to join their group.

Plaintiff alleges, *inter alia*, that Defendants, along with the TPMC, have "conspired to use scare tactics to discourage specification and acceptance of Santana's HDPE partitions in lieu of or as a replacement material for conventional materials by falsely alleging that Santana's partitions posed a dangerous fire hazard." (Complaint ¶ 23.) Defendants and non-party co-conspirators allegedly carried out their conspiracy by, *inter alia*, distributing "fact sheets" and videotapes containing misleading statements as to the flammability of Plaintiff's product. The Complaint alleges that through these and other actions, Defendants and non-party co-conspirators "conspired to monopolize at least a part of the trade in interstate commerce for toilet partitions and to maintain power to exclude or restrain manufacturers of HDPE partitions from marketing and selling their goods in interstate commerce in violation of Section 2 of the Sherman Act". (Complaint ¶ 72.)

We noted in the December 29 Order that Plaintiff's claim under Section 2— conspiracy to monopolize—was relatively novel insofar as it alleged that Defendant combined with many of its competitors to monopolize a portion of the toilet partition industry. In its motion for reconsideration, Plaintiff asserts that "It is ... clear that Supreme Court and lower court precedent overwhelmingly support the principle that a conspiracy to acquire a monopoly for a group of co-conspirators is just as unlawful as a conspiracy to gain a monopoly for a single firm." (Plaintiff's Motion for Reconsideration at 14.) As we discuss below, it may be possible, in situations not analogous to that presented here, for competitors to band together to monopolize a portion of an industry. On the facts presented here, however, Plaintiff could not state a claim for conspiracy to monopolize.

## STANDARD FOR RECONSIDERATION

To prevail on a motion for reconsideration under Rule 59(e), the movant must present "[factual] matters or controlling decisions the court overlooked that might materially have influenced its earlier decision." *Robins v. Max Mara, U.S.A., Inc.,* 923 F.Supp. 460, 472 (S.D.N.Y.1996). Alternatively, the movant must demonstrate "the need to correct a clear error or prevent manifest injustice." *Morales v. Quintiles Transnational Corp.,* 25 F.Supp.2d 369, 372 (S.D.N.Y.1998). These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court. *See Monaghan v. SZS 33 Assocs., L.P.,* 153 F.R.D. 60, 65 (S.D.N.Y. 1994). The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court. *See*

*McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983).

## DISCUSSION

Plaintiff claims that the court erred in failing to consider three decisions it claims supports its view that Defendants here could be found to have conspired with its competitors to monopolize a portion of the toilet partition industry. First, it cites the following language from *American Tobacco Co. v. United States,* 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946) which addressed allegations of antitrust violations by the Big 3 cigarette manufacturers:

> "Petitioners ... might have been convicted here of a conspiracy to monopolize without ever having acquired the power to carry out the object of the conspiracy, i.e., to exclude actual and potential competitors from the cigarette field." *Id.* at 789, 66 S.Ct. 1125.

We discussed the implications of *American Tobacco* in the December 29 Order. There we found that the Court's holding was not addressed specifically to the issue before us. The language cited above was part of discussion, in dicta, in which the court explained the distinction between the commission of an offense and a conspiracy to commit the offense. The Court's language could have referred to each petitioner individually, rather than petitioners as a group. Therefore, the fact that the petitioners were comprised of multiple competitors was not a necessary predicate to the statement cited above. We do not believe *American Tobacco* is controlling here. *See. e.g., H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.,* 672 F.Supp. 724, 742 (S.D.N.Y.1987) (noting that the "discreet question" of who must combine to constitute a conspiracy under Section 2 was not addressed in *American*

*Tobacco* ), *aff'd on other grounds,* 879 F.2d 1005 (2d Cir.1989).

▇ Plaintiff also cites *Continental Ore Company v. Union Carbide & Carbon Corporation,* 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962), and *United States v. Consolidated Laundries Corporation,* 291 F.2d 563, 573 (2d Cir.1961), in support of its claim that a group of competitors can conspire to monopolize. While that in itself may be a true statement of law, the cases cited do not support Plaintiff's argument as applied here. In both *Continental Ore* and *Consolidated Laundries,* proof defendant conspirators were alleged to have allocated customers in their respective markets. 370 U.S. at 693, 82 S.Ct. 1404, 291 F.2d at 572. Such allegations provide the requisite proffer of intent to gain market power sufficient to exclude competition. No such allegation is made here.[1]

Here, Plaintiff essentially alleges that Defendants banded together with its competitors to spread false rumors about HDPE products. While this is sufficient to state a cause of action for conspiracy in restraint of trade under Section 1, we found it insufficient to state a claim under Section 2. We held that Plaintiff must allege more than mere unfair trade practices to state a claim for conspiracy to monopolize. December 29 Order at 15. Indeed, several courts have commented on such a distinction between Sections 1 and 2, including *American Tobacco,* on which Plaintiff relies for another proposition. There, the Supreme Court stated that in order to plead a cause of action for conspiracy to restrain trade and to monopolize, the antitrust laws "require proof of conspiracies which are reciprocally distinguishable from

---

1. It has been stated that two or more firms may conspire to monopolize only where "the aim of the conspiracy is to form a single entity to possess illegal power". *Sun Dun, Inc. of Washington v. Coca–Cola Co.,* 740 F.Supp. 381, 391–92 (D.Md.1990). We would take one step back and state that a claim for conspiracy to monopolize may also be stated where two or more competitors seek to allocate a market and exclude competitors, even if they do not form a single corporate entity. In the case at bar, even this is not adequately alleged.

and independent of each other". *Id.*, 328 U.S. at 788, 66 S.Ct. 1125.

Here, Plaintiff has not adequately alleged a conspiracy to control a portion of the toilet partition market separate and apart from the alleged conspiracy to restrain the rise of HDPE toilet partitions. The intended result of the "concerted activity" alleged here may aptly be deemed a "shared monopoly" or an oligopoly in which several entities together possess sufficient market power to exclude competitors.[2]

While courts have disagreed on whether competitors can conspire to form a shared monopoly, or oligopoly, under Section 2, *see, e.g., JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*, 190 F.3d 775, 780 (7th Cir.1999) (noting that oligopolistic interdependence may be actionable under Section 2 where an agreement is proven, despite the fact that the second circuit appears to have rejected that theory), we note several decisions holding that such a claim is not cognizable. *See, e.g., In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.* 782 F.Supp. 481, 486 (C.D.Cal.1991) (holding that "sharing by numerous competitors of monopoly power" does not sound in antitrust law); *Sun Dun*, 740 F.Supp. at 390 (holding that where plaintiff alleged two competitors conspired to monopolize a market, plaintiff actually "alleges facts amounting to oligopoly and then simply applies a monopoly label to those facts in an effort to state a Section 2 claim ... but competitors, by conspiring to maintain or create an oligopoly, do not run afoul of the Section 2 prohibition against monopoly"); *H.L. Hayden*, 672 F.Supp. at 741 (S.D.N.Y.1987) (expressing "considerable discomfort" with

shared monopoly theory and noting that the "notion that two competitors could conspire to monopolize is, seemingly, antithetical"); *Consolidated Terminal Sys., Inc. v. ITT World Communications, Inc.*, 535 F.Supp. 225, 229 (S.D.N.Y.1982) (stating the an oligopoly, or a shared monopoly, does not in itself violate Section 2 of the Sherman Act); *Crimpers Promotions, Inc. v. Home Box Office, Inc.*, 554 F.Supp. 838, 841 n. 2 (S.D.N.Y.1982) (stating that a claim that competitors monopolized the industry is a claim of oligopoly and is not cognizable under Section 2 of the Sherman Act). We thus find that we did not overlook controlling decisions that might have influenced our earlier decision.

## AMENDMENT OF THE COMPLAINT

In the December 29 Order, we noted that Plaintiff did not identify any other HDPE manufacturers, and so we did not consider Plaintiff to be representative of a larger group of manufacturers allegedly harmed by Defendant's conduct. In so finding, we provided an alternative basis for dismissing Plaintiff's Section 2 claim based on the principle that "where only one competitor is alleged to be. targeted as opposed to an entire market, a conspiracy to monopolize claim must fail." December 29 Order at 14–15 (citing *Interborough News Co. v. Curtis Publ'g Co.*, 127 F.Supp. 286, 298 (S.D.N.Y.1954)). Though Plaintiff admits it "did not specify which or how many other HDPE toilet partition manufacturers there were" in the original complaint, it now seeks leave to amend its complaint to add the names of such other manufacturers.

■■■ As an initial matter, Petitioner has failed to demonstrate that the court

---

**2.** Contrary to Plaintiff's argument. "shared monopolies", or oligopolies, are not limited to situations where there is only "tacit collusion". In *Harkins Amusement Enter. v. General Cinema*, 850 F.2d 477, 490 (9th Cir.1988), plaintiff alleged Defendant joined with its competitors in bid rigging, circuit-wide deals, illusory advances and/or guarantees and blind bidding. Despite such allegations of overt concerted activity, the Ninth Circuit still discussed Plaintiff's "shared monopoly" theory,

noting that it was an open question whether such a claim was cognizable under Section 2. *Id.* The court held that under the facts presented there, plaintiffs failed to state a claim for shared monopoly under Section 2. *Id.; see also Sun Dun*, 740 F.Supp. at 390 (allegation that two competitors conspired to monopolize a market through horizontal arrangements is more appropriately deemed an allegation of oligopoly which is not actionable under Section 2).

"overlooked" any factual matters sufficient to warrant reconsideration. The December 29 Order specifically states that though Plaintiff alleges in conclusory fashion that Defendants' conduct harmed "Plaintiff and other HDPE manufacturers", this was insufficient to allege that Defendants sought to exclude competition generally as opposed to Plaintiff alone. December 29 Order at 14 n. 3. While Plaintiff now wishes to correct the deficiency in the Complaint by adding the names of the other manufacturers, such relief is inappropriate on a motion for reconsideration.

In any case, we need not further address this issue because the legal ruling discussed above is a sufficient basis on which to support the Court's dismissal of Plaintiff's Section 2 claim. If Plaintiff is successful in an interlocutory appeal on the above legal issue, it may then file a renewed motion for leave to amend the Complaint and the Court will consider the motion at that time.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for reconsideration or, in the alternative, to alter, amend or vacate partial judgement and for leave to amend the Complaint is DENIED.

SO ORDERED.